IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Vincent Jerome Boseman,<br><br>        Petitioner,<br><br>v.<br><br>Warden of Lee Correctional Institution,<br><br>        Respondent. | Civil Action No.:2:11-3265-TLW-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

  The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the (a) Respondent's Motion for Summary Judgment (Dkt. No. 15; see also Dkt. No. 16) and (b) the Petitioner's Motion to Amend (Dkt. No. 24).

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

  The Petitioner brought this habeas action on or about November 23, 2011. (Dkt. No. 1.) On March 28, 2012, the Respondent moved for summary judgment. (Dkt. No. 15; see also Dkt. No. 16.) By order filed March 29, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 17.) Petitioner filed his Response in Opposition to the Motion for Summary Judgment on or about April 19, 2012. (See Dkt. No. 20.) On or about July 19, 2012, Petitioner filed a Motion to Amend/Correct his § 2254 Petition. (Dkt. No. 24.) Respondent opposes amendment. (Dkt. No. 25.)

## PROCEDURAL HISTORY

  The Petitioner is currently confined at Lee Correctional Institution ("LCI"). In March of 1997, Petitioner was indicted by the Richland County Grand Jury for armed robbery, and

in November of 1998, he was indicted for assault of a high and aggravated nature and resisting arrest. (R. at 1304-10.) The Petitioner was represented by Beattie Butler, Esquire, and Ian Deysach, Esquire. (Id. at 1.) A jury trial was held on December 4-7, 2000, before the Honorable James C. Williams. Jr. (Id. at 1-566.) The jury convicted Petitioner as charged, and Judge Williams sentenced Petitioner to (a) life without the possibility of parole for the armed robbery conviction; (b) ten years, concurrent, for assault and battery of a high and aggravated nature; and (c) one year, concurrent, for resisting arrest. (Id. at 564.)

On February 4, 2003, the South Carolina Court of Appeals filed an unpublished opinion reversing Petitioner's convictions and remanding for a new trial. (Id. at 1152-58.)

A second jury trial was held July 28-31, 2003, before the Honorable J. Mark Hayes, III. (Id. at 567-1150.) Petitioner was represented at this trial by Douglas Strickler, Esquire. (Id. at 567.) The jury convicted Petitioner of armed robbery, resisting arrest, and simple assault. (Id. at 1134-38.) Judge Hayes sentenced Petitioner to life without parole for armed robbery; one year, concurrent, for resisting arrest; and thirty days, concurrent, for simple assault. (Id. at 1147-49.)

Petitioner appealed and was represented on appeal by Tara S. Taggart, Esquire, of the South Carolina Office of Appellate Defense. (Id. at 1176.) On December 20, 2004, Ms. Taggart filed the Final Brief of Appellant in the South Carolina Court of Appeals, wherein she raised the following issue:

> Whether the trial judge erred in "incorporating by reference" the pre-trial proceedings, including rulings, in appellant's previous trial on the same charges.

(Id. at 1179.)

On May 5, 2005, the South Carolina Court of Appeals issued an unpublished opinion affirming Petitioner's conviction. (Id. at 1186-89.) The Court of Appeals denied the Petition for Rehearing on June 22, 2005. (Dkt. No. 16-16.) On September 21, 2005, Petitioner filed

2

a Petition for Writ of Certiorari in the South Carolina Supreme Court, wherein he raised the following issue:

> Whether the Court of Appeals erred in holding a violation of the Confrontation Clause was harmless error.

(Dkt. No. 16-17 at 3 of 10.) The South Carolina Supreme Court denied the petition on November 2, 2006, and the South Carolina Court of Appeals issued the remittitur that same day. (Dkt. No. 16-19; Dkt. No. 16-20.)

On or about November 28, 2006, Petitioner filed an application for post-conviction relief. (R. at 1191-95; Dkt. No. 16-12 at 91-95 of 106.) The following questions and answers appeared in his PCR application (verbatim):

> 9. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully.
>
> (a) Failed to object to the State using Rule 4(b) SCRCrimP to preclude me from having hearing
> (b) Ineffective assistance of counsel did not challenge the rulings of the court.
> (c) The withdrawal of his objection to incorporating previous hearing and rulings in new trial
>
> 10. State concisely and in the same order the facts which support each of the grounds set out in (9):
>
> (a) Volume 1 trial transcript page 43 line 13 thru 25 pg 44 line 1 thru 24
> (b) Volume 1 trial transcript pg 47 line 18 thru 25
> (c) Volume 1 trial transcript pg 175 line 8 thru 19

(Dkt. No. 16-12 at 92 of 106.)

On April 28, 2008, an evidentiary hearing was held before the Honorable G. Thomas Cooper. (R. at 1202-57.) Petitioner was present and represented by Tara D. Shurling, Esquire. (Id. at 1202.) In an order dated July 21, 2008, Judge Cooper denied the application for post-conviction relief and dismissed the petition. (R. at 1280-90.) On August 7, 2008, Ms. Shurling filed a Motion to Alter or Amend pursuant to Rule 59(e) of the South Carolina Rules

3

of Civil Procedure. (Id. at 1292-96.) Judge Cooper denied that motion in an Order dated November 5, 2008. (Id. at 1303.)

On April 13, 2009, Robert M. Pachak, Esquire, of the South Carolina Commission on Indigent Defense filed a Johnson Petition for Writ of Certiorari on behalf of Petitioner. (Dkt. No. 16-21.)[1] Petitioner raised the following issue therein:

> Whether defense counsel was ineffective in failing to object to Howard Smith's testimony concerning his out-of-court identification of petitioner?

(Dkt. No. 16-21 at 3 of 9.) By letter dated April 14, 2009, the Clerk of the South Carolina Supreme Court advised Petitioner that his counsel "submitted a Petition for Writ of Certiorari indicating that [the] appeal is without merit and moves to be relieved as your counsel." (Dkt. No. 16-23.) The letter advised Petitioner that he had forty-five days to file a *pro se* response to the Petition wherein he could "raise and argue any issues [he] believe[d] the Court should consider in this appeal." (Id.)

On March 10, 2010, the South Carolina Supreme Court transferred the case to the South Carolina Court of Appeals. (Dkt. No. 16-24.) As noted by Respondent, it does not appear that Petitioner filed a *pro se* brief.[2] On August 16, 2011, the South Carolina Court of Appeals entered an order denying the petition. (Dkt. No. 16-25.) The matter was remitted to the lower court on September 1, 2011. (Dkt. No. 16-26.)[3]

---

[1] See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

[2] On or about July 2, 2010, Petitioner filed a document he entitled "Notice of Motion and Motion for Relief from a Judgment or Order Pursuant to Rule 60(b) South Carolina Rules of Civil Procedure." (Dkt. No. 16-27.) In this motion, Petitioner complained that he was denied "a fair trial and/or hearing" at his retrial when the court accepted the rulings made in his previous trial. (See Dkt. No. 16-27 at 3 of 40.) That motion was denied on August 23, 2010. (Dkt. No. 16-27 at 1 of 40.)

[3] It appears that Petitioner filed a second PCR application on or about September 9, 2011. (See Dkt. No. 16-28.)

4

The Petitioner then filed the instant habeas action raising the following grounds for review (verbatim):

> **Ground One**: Trial counsel was ineffective for failing to object to [the] state using [R]ule 4(b) to prevent me to reargue issues that had been ruled on.
> **Supporting Facts**: The pre-trial hearings that took place in the 2000 proceedings, which were incorporated into the 2003 trial, were in limine proceedings. As such, they were not final rulings on admissibility of evidence and were subject to being changed after the trial judge had the benefit of all the pertinent evidence. The state relied on Rule 4(b) SCRCRIMP, which states "if any motion be made to any judge and be denied, in whole or in part, or be granted conditionally, no subsequent motion on the same set of facts shall be made to any other judge in that action["] (the second trial was a separate action[).]
>
> **Ground Two:** Counsel ineffective for failing to object and/or preserving issues for collateral review.
> **Supporting Facts**: Applicant was granted relief on appeal based on a pre-trial matter involving the improper remedy afforded under Batson v. Kentucky, 476 U.S. 79 (1986). The Judge allowed the state to pick and choose which portion of a new trial applicant was to be granted [and] deprived applicant of basic due process. [T]he trial judge clearly abused his discretion by denying applicant the new trial he had been granted.

(Dkt. No. 1.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt

5

v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## **DISCUSSION**

Respondent moved for summary judgment on all of Petitioner's grounds for relief. (See Dkt. No. 15; Dkt. No. 16.) After Respondent moved for summary judgment, Petitioner filed a Motion to Amend. (Dkt. No. 24.) The undersigned will address Petitioner's Motion to Amend (Dkt. No. 24) and Petitioner's grounds for relief in turn.

**A. Motion to Amend (Dkt. No. 24)**

Petitioner filed a Motion to Amend (Dkt. No. 24) on or about July 19, 2012. In that motion, Petitioner contends he made the following allegation of ineffective assistance of counsel at the PCR hearing: "Trial counsel was ineffective for failing to move to exclude Howard Smith's identification of the Petitioner at the incident scene." (Dkt. No. 24 at 1 of 4.) Petitioner cites <u>Martinez v. Ryan</u>, 132 S.Ct. 1309 (2012), and contends that because his PCR counsel was ineffective "for failing to properly file" a Rule 59(e) motion, "[t]he said meritorious issue could not have been properly preserved for this courts [sic] review." (<u>Id</u>. at 1-2.)

Respondent opposes amendment of the habeas petition. (<u>See</u> Dkt. No. 25.) Respondent "opposes the motion only on the grounds of futility as the free-standing claim Petitioner wishes to add is not cognizable in an action for habeas relief, and, alternatively, Petitioner has not alleged a claim for which cause to excuse a default is necessary to resolve." (Dkt. No. 25 at 1.) Respondent contends that to the extent Petitioner wishes to add a free-standing claim that PCR counsel was ineffective, that claim is not cognizable. (<u>Id</u>.) Respondent further states,

> To the extent Petitioner simply claims ineffective assistance as cause to excuse the default, that argument is cognizable. However, Petitioner's argument is without factual basis as there was no allegation that counsel failed to file the motion to reconsider or filed a defective motion. At any rate, the only argument Petitioner appears to complain was missing in the motion was one on failure of trial counsel to move to exclude Howard Smith's identification of Petitioner. Petitioner does not raise an issue regarding identification in the instant action. . . . [T]he amendment should be denied on futility.

(<u>Id</u>. at 2.)

Petitioner filed a Reply, wherein he argued that his PCR counsel was ineffective for failing to properly file a Rule 59(e) motion in the PCR action. (Dkt. No. 26 at 1 of 4.) Petitioner contends that PCR counsel erroneously failed to file page 2 of her Rule 59(e)

7

motion. (Id.) Petitioner further contends that his trial counsel was ineffective for "failing to specifically argue how the Petitioner was prejudice[d] by the 2003 ruling that [the court] was 'bound' by the decisions made by the 2000 trial judge during the 2000 trial." (Id. at 2 of 4.) Petitioner complains that–despite the "no subsequent motion" ruling–the court allowed Howard Smith to testify, despite the fact that he did not testify at the first trial. (Id.)

To the extent Petitioner attempts to raise a free-standing claim in the instant habeas action that his PCR counsel was ineffective, that claim is not cognizable herein. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); see also Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings."). The holding in Martinez v. Ryan, 132 S.Ct. 1309 (2012), does not make such a free-standing claim cognizable. Instead, the Supreme Court held in Martinez that a habeas petitioner asserting a claim for ineffective assistance of counsel could demonstrate sufficient cause to excuse a procedural default upon a showing that counsel in the initial-review collateral proceeding was ineffective pursuant to the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), in failing to raise a claim that should have been raised. See Martinez, 132 S.Ct. 1309; see also Dickens v. Ryan, 688 F.3d 1054, 1073 (9th Cir. 2012) ("In other words, Martinez did not create a constitutional right to effective assistance of counsel in PCR proceedings."). Thus, to the extent Petitioner seeks to amend his § 2254 petition to include a free-standing claim that his PCR counsel was ineffective, that request should be denied.

However, the undersigned recommends allowing amendment to add one claim. A fair reading of Petitioner's motion indicates that Petitioner wishes to amend his petition to include the allegation that his "[t]rial counsel was ineffective for failing to move to exclude Howard Smith's identification of Petitioner at the incident scene." (See Dkt. No. 24 at 1 of

8

4.) Respondent's argument as to why this amendment should be denied is less than clear. Petitioner clearly raised this issue at his PCR hearing. (See R. at 1213-14, 1218-19, 1226-27, 1243-44.) In addition, PCR counsel filed a brief wherein she addressed that very issue and argued that trial counsel was ineffective for failing to object to Howard Smith's testimony. (See R. at 1268-70.) Likewise, her Rule 59(e) motion addressed the issue. (See R. at 1293-94.) Finally, that issue was also raised in Petitioner's Johnson Petition for Writ of Certiorari. (See Dkt. No. 16-21 at 3 of 9.) The undersigned therefore recommends allowing Petitioner to amend his § 2254 petition to include the allegation that trial counsel was ineffective for failing to move to exclude Howard Smith's identification of Petitioner at the incident scene. The undersigned will address the merits of this claim below.

**B. Ground One**

As noted above, Petitioner contends in Ground One that his trial counsel was ineffective "for failing to object to [the] state using Rule 4(b) to prevent [him from] reargu[ing] issues that had been ruled on." (Dkt. No. 1.) Petitioner asserts that the rulings from the "pre-trial hearings that took place in the 2000 proceeding[] . . . were in limine proceedings" and "were not final rulings on admissibility of evidence" and therefore should not have been "incorporated into the 2003 trial." (Id.)

In his Motion for Summary Judgment, Respondent contends Petitioner is not entitled to relief on this ground because (a) it is procedurally defaulted, and (b) it is without merit, as trial counsel "did, in fact, object to the incorporation of rulings." (Dkt. No. 16 at 11-12.)

The undersigned recommends granting summary judgment to Respondent on Ground One. Strickland v. Washington, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Id. at 687–96. A court's evaluation of counsel's performance under this standard

must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id.

Ground One clearly fails on the merits. Contrary to Petitioner's assertion, his trial counsel did argue against having the rulings from the 2000 trial apply to the 2003 trial. (See R. at 615.) Trial counsel stated,

> This case, subsequent to Judge Williams' rulings, which I take notice with the fact that those rulings were made–subsequent to the rulings being made, it was appealed. The case was reversed, sent back down for a new trial. The Supreme Court [of South Carolina] had nothing to say, in my reading of the opinion of the case, one way or the other regarding the rulings made by Judge Williams on the search and on the–on the–Neil v. Biggers identification hearings.
> So my position is that I'm not asking you to overrule another judge. I know the rule on that. I wouldn't do that. I–my submission to you is that we're back to square one. There is no law of the case at this particular point in time and the State needs to prove what they have to prove. They need to satisfy you as the gatekeeper as far as admissibility of evidence of the propriety of permitting in court identification in this case based upon the facts and circumstances surrounding the out of court show-up I.D. that was conducted in this case.

(Id.) Mr. Strickler made the argument, but the judge ruled against him. (Id. at 618.) Only when the judge ruled against him did Mr. Strickler ask to incorporate the record of the previous case. (Id.) Stricker stated,

> I don't know what was dealt with on appeal and I certainly don't want the fact that we don't have a hearing today to preclude the court–a higher court from addressing those issues if someone smarter than I can figure out a way to argue for Mr. Boseman should he be convicted again.

(Id. at 618-19.)

Certainly trial counsel cannot be deemed ineffective for failing to object when counsel did, in fact, object. Cf. Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir. 1999) ("[I]f there is no merit to Hartey's claims that the prosecution's statements . . . should not have been permitted at trial, his counsel cannot be deemed ineffective for not having objected to their presentation . . . ."). Furthermore, the South Carolina Court of Appeals rejected the argument that the "trial court committed reversible error warranting a new trial by incorporating as binding certain portions of the pretrial transcript and rulings from his first trial." (R. at 1187.) The undersigned therefore recommends granting summary judgment to Respondent on Ground One.

**C. Ground Two**

In Ground Two, Petitioner contends his counsel was "ineffective for failing to object and/or preserv[e] issues for collateral review." (Dkt. No. 1.) Petitioner contends that although he was granted a new trial after appeal of the first trial, the judge "allowed the state to pick and choose which portion of a new trial applicant was to be granted [and] deprived applicant of basic due process." (Id.) Petitioner asserts the trial judge "clearly abused his discretion by denying applicant the new trial he had been granted." (Id.)

11

Respondent argues he is entitled to summary judgment on this ground because (a) it is procedurally defaulted, and (b) Petitioner "could not show deficient performance." (Dkt. No. 16 at 13-14.)

The undersigned recommends granting summary judgment to Respondent on Ground Two. As a preliminary matter, Petitioner's assignment of error in Ground Two is not specific; it is not clear what objections and issues Petitioner contends his trial counsel failed to raise. To the extent Petitioner claims his counsel was ineffective in failing to object to the trial court incorporating the 2000 rulings into the 2003 trial, that argument should be rejected for the reasons set forth in Part B above. Counsel cannot be ineffective for failing to object when he did, in fact, object. Furthermore, the South Carolina Court of Appeals rejected Petitioner's argument that the "trial court committed reversible error warranting a new trial by incorporating as binding certain portions of the pretrial transcript and rulings from [the] first trial." (R. at 1187.) The undersigned therefore recommends granting summary judgment to Respondent on Ground Two.

**D. Ground Three**

Because the undersigned recommended allowing Petitioner to amend his § 2254 petition, the undersigned now addresses the merits of this newly added claim. For the reasons set forth below, the undersigned recommends granting summary judgment to Respondent on this ground as well.

As noted above, Petitioner contends his trial counsel was ineffective "for failing to move to exclude Howard Smith's identification of Petitioner at the incident scene." (Dkt. No.

24 at 1 of 4.) Although the PCR court's order does not address this *exact* argument,[4] the PCR court's order contains a relevant passage:

> Regarding any allegations of ineffective assistance of trial counsel, during the second trial, for failing to attempt to exclude the testimony of witness/victim Smith because Smith was unable to identify the Applicant (in courtroom during an in-camera hearing) as the individual who he identified the night of the incident, this Court finds the Applicant has failed to demonstrate that trial counsel's actions fell below the standards of professional norms, nor that the Applicant was prejudiced. The ability of Smith to identify the individual in the courtroom, during an in-camera hearing, as the one whom he identified, the night of the incident, is inconsequential to whether the testimony was admissible. Witness/victim Smith's identification of Applicant on the night of the incident was not unduly suggestive. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). And there is no issue that the Applicant, as defendant, was the individual identified by witness/victim Smith. Accordingly, there is neither ineffective assistance counsel nor prejudice to the Applicant regarding the admissibility of witness/victim Smith's testimony.

(R. at 1287.)

---

[4]The PCR court addressed the issue of whether trial counsel was ineffective "for failing to attempt to exclude the testimony of witness/victim Smith because Smith was unable to identify the Applicant (in courtroom during an in-camera hearing) as the individual who he identified the night of the incident." (R. at 1287.) It appears, however, that Petitioner was arguing a slightly different issue. Petitioner's PCR counsel stated in a brief,
> The Court has misinterpreted the Applicant's argument. He does not argue that the fact that Smith could not make an in-court identification makes his out-of-court identification inadmissible. Instead, the Applicant argues that the out-of-court identification was so tainted that both the out-of-court identification *and* Smith's testimony regarding his identification should have been suppressed.
> Smith identified the Applicant during a show-up identification. Unlike the Court's finding that the identification was not unduly suggestive, show-up identifications are particularly disfavored in the law and are generally assumed to be unduly suggestive. See Stovall v. Denno, 388 U.S. 293 (1967). Furthermore, Smith's identification lacked sufficient indicia of reliability to be admissible. Smith only had a few minutes to view the Applicant prior to the robbery in a dingy hotel room where several other individuals were present. Additionally, the Applicant's attention was focused on other individuals in the room. Smith did not have an opportunity to give a statement to the police prior to the Applicant's arrest. He made the identification approximately fifteen minutes after the robbery.

(App. 1293-94.)

13

The undersigned recommends granting summary judgment to Respondent on Ground Three because Petitioner fails to establish the prejudice prong of Strickland. In Neil v. Biggers, 409 U.S. 188 (1970), the Supreme Court held that the Due Process Clause requires the exclusion at trial of evidence of a pre-trial identification of a person if, based on the totality of the circumstances, the procedure used to obtain the identification was both (1) unnecessarily suggestive and (2) conducive to mistaken identification. Neil, 409 U.S. at 199-201. The Court further held that in determining the reliability of an identification, a court is to consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and confrontation. Id. The mere fact that there was a show-up identification does not mean that habeas relief is warranted; instead, the "central question[ is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 198-99.

Before Mr. Smith was allowed to testify at trial, an *in camera* hearing was held. At that hearing, Smith testified that he had been living in Room 35 at the Town and Tourist, and although it was dark outside on the evening of February 14, the light inside the room was good. (R at 621.) Smith testified that when he heard a knock at the door, he opened it, and came face-to-face with the individual who knocked on the door. (Id. at 632.) Smith testified he had seen this individual once before, when this individual and a female sat down in Room 35 and talked with Smith. (Id. at 622.) Smith testified that the closest he came to the individual was "bed length" or a "couple of feet[]". (Id. at 625.) According to Smith, nothing obstructed his view of this individual, and Smith was able to see his face. (Id.) The individual was in the room for about five minutes, asking the occupants if they wanted to buy a cell

14

phone, before that individual pulled a gun and robbed them. (Id. at 632.) The robber instructed the occupants to strip and go into the bathroom; the occupants complied. (Id. at 625-27.) After hearing a gunshot, the occupants came out of the bathroom and put their clothes back on. (Id. at 627.) As soon as the occupants put their clothes back on, they went to the breezeway and identified Petitioner as the robber. (Id. at 627-28.) Smith never provided the police with a description of the robber but instead identified him in the breezeway, which is where Smith went as soon as he left Room 35. (Id. at 635.) Smith identified the robber approximately fifteen minutes after Smith heard the gunshot. (Id. at 628.) Smith testified there was "no doubt" in his mind that the person he identified was the robber. (Id. at 629.)

Although trial counsel did not articulate a strategic reason for failing to challenge Smith's out-of-court identification, Petitioner is not entitled to habeas relief on Ground Three because there was no prejudice. Similar challenges were made–and rejected–at the first trial. Judge Williams stated, *inter alia*,

> I've looked. I've evaluated the factors listed in Neil v. Biggers as well as State v. Scipio and State v. Drayton. You know, these three individuals all had ample opportunity to look at the man for various lengths of time. Depending on the testimony, one of them, the third one, testified that he'd been with him prior that day and knew him even before he first saw him outside the room before they went into the room and that they were in the room a while together, watching the T.V. and then the man pointed the gun at all of them and robbed him. And so certainly they had the opportunity to see him.
> They were inside a room which was a motel room with the lights on. Even though there's some testimony that the lights were dim outside, certainly there was ample testimony of all three of these witnesses to view the individual under circumstances where they could identify him later on. And there has been–all three of them testified when they saw the man that the police had, there was no question in their mind that that was the individual who had robbed them. It was from 10 to 20 minutes after the actual robbery until they saw him again later on.
> The question is not whether it's suggestive. Of course its suggestive when somebody sees a man, the police running him down, the man who they think has just robbed them; and then they bring him back and say, is this the man? Of course that's suggestive. The question is whether or not it's

15

> unnecessarily suggestive, whether or not there was any other reasonable thing for the police to take.
>
> Our courts have ruled that the defendant does have the due process right to be moved on and cleared. The police could have taken him I guess and locked him up and set a photo line-up and then bring the fellows in. But the more sensible thing to do is you've got the victims right on the scene. They asked them, is this the man? They could have said no, and he'd have been free. Otherwise the defendant could be in here claiming they violated his rights in now showing him but taking him to jail and locking him up until he could do a photo line-up.
>
> There's just nothing here to suggest that the identification is not reliable. There's nothing to suggest that anybody took any conduct or any action to suggest an unreliable or improper identification or anything that was conducive to an improper identification. There's nothing to suggest that any of these three would have said, no, that's not him, if that had been the case. So, I deny your motion to suppress the identification.

(R. at 139-40.) Although Judge Williams was not speaking about Smith's identification, as Smith did not testify in the first trial, there is no reason to believe that Judge Hayes would have ruled differently, especially since Judge Hayes adopted Judge Williams' rulings. Furthermore, the PCR court concluded that Smith's identification did not violate Neil v. Biggers, 409 U.S. 188. (See R. at 1287.)

In addition to there being no reason to believe that Smith's identification would have been suppressed had counsel made that motion, the undersigned concludes there was no prejudice in the case *sub judice* because there was a wealth of other evidence indicating that Petitioner was, in fact, the individual who committed the robbery. Willie McCalvin testified that after he declined to purchase a cell phone from Petitioner, Petitioner pointed a gun at McCalvin's face and said "this is a robbery." (R. at 712.) McCalvin testified that after he "gave up" some money to Petitioner, Petitioner went through McCalvin's pockets and took McCalvin's identification (and that of McCalvin's godmother), McCalvin's Social Security card, and McCalvin's cell phone. (Id. at 721-22.) McCalvin further testified that he saw police searching Petitioner and that he saw police take McCalvin's identification cards and cell

16

phone from Petitioner's pockets. (Id. at 734-35.) A police officer testified that he recovered these stolen items from Boseman's pockets.

Specifically, Brian O'Connell, then a Corporal with the Columbia Police Department, testified that he was walking on patrol with another officer on the night of February 14, 1997, at approximately 10:28 P.M. outside the Town and Tourist when they heard a single gunshot "coming from inside the Town and Tourist area." (R. at 950-58.) O'Connell testified that he and the other officer began moving towards the Town and Tourist when they saw an individual running; they ordered the individual to stop, but he did not stop. (Id. at 959-60.) O'Connell further testified that the individual then ran back into the Town and Tourist, so he and the other officer followed the individual. (Id. at 961.) O'Connell testified that when he searched that individual–the Petitioner–O'Connell found McCalvin's identification, McCalvin's cell phone, and an identification belonging to one of McCalvin's family members. (R. at 973-77.)

Petitioner is unable to establish prejudice as a result of trial counsel's failure to challenge Smith's identification. See Warren v. Adams, 444 Fed. App'x 204, 207 (9th Cir. 2011) (no prejudice where trial counsel failed to challenge show-up); Taylor v. United States, No. 05-359, 2010 WL 2553616, at *9 (E.D. Pa. June 22, 2010) ("There is no reasonable probability that the result of the trial would have been different had the motion to suppress the 'show up' identification had been raised and granted, especially given the strength of the Government's case."). The undersigned therefore recommends granting summary judgment to Respondent on this ground.

## **CONCLUSION**

It is therefore RECOMMENDED, for the foregoing reasons, that Petitioner's Motion to Amend (Dkt. No. 24) be GRANTED. It is further recommended that Respondent's Motion for Summary Judgment (Dkt. No. 15) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. The undersigned further RECOMMENDS that a certificate of appealability be DENIED.[5]

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

September 24, 2012
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

---

[5] Title 28, Section 2253 provides in relevant part,
    (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
    (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
    (B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).